UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SHERRY SURINTA,

        Plaintiff,

v.   **MEMORANDUM OF LAW & ORDER**
    Civil File No. 13-CV-00817 (MJD/JJG)

CREDIT CONTROL SERVICES, INC.
dba CREDIT COLLECTION SERVICES, and
MONCO LAW OFFICES, SC,

        Defendants.

Jonathan L.R. Drewes and Bennett Hartz, Drewes Law PLLC, Counsel for Plaintiff.

Ashley M. DeMinck and Russell S. Ponessa, Hinshaw & Culbertson LLP, Counsel for Defendant Credit Control Services, Inc. dba Credit Collection Services.

## I. INTRODUCTION

This matter is before the Court on Defendant Credit Collection Services' ("CCS") Motion for Judgment on the Pleadings [Docket No. 33]. The Court heard oral argument on November 8, 2013.

1

## II.   BACKGROUND

### A. Factual Background

Taking the facts alleged in the Amended Complaint and its Exhibits to be true, on March 6, 2013, Plaintiff Sherry Surinta used Trans Union, LLC's ("Trans Union") online dispute service to dispute a debt she had with her creditor ("debt collector"), CCS.  (Am. Compl. ¶ 12, Ex. A.)  Specifically, Plaintiff stated that the account with CCS "was paid to the original creditor prior to becoming a collection or charge-off" and that CCS "agreed to remove this account from [her] file."  (Am. Compl., Ex. A.)  Sometime between March 6, 2013 and April 3, 2013, Trans Union notified CCS of Plaintiff's dispute as required by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(a)(2).  (Am. Compl. ¶ 13, Ex. B (providing that Trans Union "completed verification of the investigation").)

Sometime between March 6, 2013 and April 3, 2013, CCS responded to Trans Union's inquiry by providing new information about the debt owed by Plaintiff.  (See Am. Compl., Ex. B.)  This response was likely provided in a communication occurring on March 14 or 15, 2013 from CCS to Trans Union ("March 14/15 Communication"): the parties stipulated at the November 8, 2013

motion hearing that the March 14/15 Communication occurred and that it was an update of debt information that did not contain a statement that Plaintiff's debt was disputed. (See Am. Compl. ¶ 15; Am. Compl., Ex. C, at 2–3; see also Pl.'s Mem. Opp'n 3 ("According to records of the exchange recently provided by Trans Union, CCS first communicated the disputed credit information to Trans Union without noting the dispute on or about March 14 or March 15.").)

These facts are the basis for Plaintiff's claim that CCS violated 15 U.S.C. § 1692e(8), which requires debt collectors to indicate when a specific debt is disputed in their communications. (Am. Compl. ¶¶ 10, 18.) In its Answer, CCS affirmatively alleged that it submitted a report to Trans Union on March 19, 2013 (the "March 19 Report") that contained the dispute code "XB," which designated Plaintiff's account as disputed. (Answer, Docket No. 23, ¶ 15, Ex. 1.)

**B. Procedural History**

On April 8, 2013, Plaintiff filed suit in the United States District Court for the District of Minnesota against Gerald Sands; Credit Management, LP; Monco Law Offices, SC; and ResidentCollect, Inc. [Docket No. 1] Plaintiff then amended her Complaint on May 2, 2013 [Docket No. 5], replacing Gerald Sands

3

and adding Trans Union and CCS as parties.  Plaintiff's Amended Complaint alleges Counts I through III, which state claims against CCS, Monco Law Offices, and ResidentCollect for violations of 15 U.S.C. § 1692e(8) (the Fair Debt Collections Practices Act).  In the alternative, the Amended Complaint also alleged Count IV: Violation of 15 U.S.C. § 1681c(f) (the Fair Credit Reporting Act) against Trans Union.

On June 28, 2013, Trans Union was dismissed from the lawsuit [Docket No. 20] after a stipulation by Plaintiff and Trans Union.  [Docket No. 19]  Plaintiff also voluntarily dismissed ResidentCollect, Inc. as a defendant to the suit.  [Docket Nos. 28, 29]  CCS and Monco Law Offices are the only defendants that remain in the suit.  On December 5, 2013, default was entered against Defendant Monco Law Offices.  [Docket No. 51]  CCS now files a Motion for Judgment on the Pleadings.  [Docket No. 33]

### III.   DISCUSSION

#### A. Standard for Judgment on the Pleadings

Judgment on the pleadings is appropriate "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of

law." Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008) (citation omitted). The Court must view the facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. Id. "When considering a motion for judgment on the pleadings . . . the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). In this case, exhibits attached to the Complaint and Answer are necessarily embraced by the pleadings. See id.

### B. Whether CCS Violated the Fair Debt Collection Practices Act (15 U.S.C. § 1692e(8))

The Fair Debt Collection Practices Act ("FDCPA") prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). To be actionable, the failure to communicate that a debt is disputed must be both

"false, deceptive, or misleading" and made "in connection with the collection of any debt." Id. § 1692e.

The material facts of this case are undisputed. Plaintiff claims that CCS violated the FDCPA when it sent the March 14/15 Communication to Trans Union because the communication failed to indicate that the debt was disputed. The Court concludes that Plaintiff's claim fails as a matter of law.

Regardless of whether the March 14/15 Communication was made "in connection with the collection of any debt," no violation of the FDCPA occurred because Plaintiff cannot establish that the March 14/15 Communication in response to Trans Union's dispute notification was "false, deceptive, or misleading." Plaintiff cannot establish this first element because of the nature of the communications between CCS and Trans Union, which are governed by the FCRA. As Plaintiff notes in the Amended Complaint, the FCRA requires a credit reporting agency like Trans Union to notify debt collectors like CCS of a consumer's dispute. (See Am. Compl. ¶ 13; 15 U.S.C. § 1681i(a)(2).) Furthermore, the FCRA requires debt collectors to promptly respond to the credit reporting agency's dispute notification with information about the

6

completeness or accuracy of the information provided by the consumer; this required response may either verify, modify, omit, or block reporting of dispute information.  15 U.S.C. § 1681s-2(b).

Under this scheme, CCS's March 14/15 Communication was not "false, deceptive, or misleading" because the fact that Plaintiff's debt was disputed was inherent in CCS's response to Trans Union's dispute notification.  See Neeley v. Express Recovery Services, No. 2:10CV605, 2012 WL 1641198, at *2 (D. Utah May 9, 2012) ("Defendant acted reasonably in assuming that Plaintiff's dispute of the debts was inherent in Defendant's response to the . . . dispute, and therefore that the credit bureaus were aware of the dispute.")  Here, by virtue of its inquiry, Trans Union was already aware that Plaintiff's debt was disputed; "in other words, if there were no disputes by Plaintiff, [Defendant] would not have had anything to which to respond."  See id. at *1.  The Court concludes that, because CCS's March 14/15 Communication was a required response in a dialogue premised on mutual knowledge of Plaintiff's dispute of the debt, it cannot accurately be described as "false, deceptive, or misleading" merely because it

lacked express reiteration that a dispute existed. Accordingly, Plaintiff cannot establish a violation under the FDCPA.

Plaintiff argues that this conclusion goes against the Eighth Circuit's decision in <u>Wilhelm v. Credico, Inc.</u>, which provides that, "if a debt collector <u>elects</u> to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." 519 F.3d 416, 418 (8th Cir. 2008) (emphasis in original). Here, however, the debt collector did not "elect to communicate" but was rather required to communicate by the FCRA. (CCS's only election to communicate occurred as the March 19 Report, which complied with the FDCPA because it contained a dispute code.) Furthermore, in the context of the required March 14/15 Communication, it can hardly be said that material information was omitted, as it was understood by both participants that Plaintiff's dispute was the very occurrence that gave rise to the communication.

Finally, this Court concludes that CCS's failure to include a dispute code in this context "in no way exemplifies the abusive behavior or false or misleading practices that Congress had in mind when it enacted the FDCPA." <u>McIvor v.</u>

<u>Credit Control Servs., Inc.</u>, Civil No. 13-956, 2013 WL 6596825, at *2 (D. Minn. Dec. 17, 2013); <u>see</u> 15 U.S.C. § 1692e.

 For these reasons, the Court concludes that the Amended Complaint, taken to be true, does not show that CCS violated § 1692e(8) of the FDCPA. CCS is thus entitled to judgment as a matter of law. Accordingly, the Court grants CCS's Motion for Judgment on the Pleadings.

 Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Credit Control Services, Inc.'s Motion for Judgment on the Pleadings [Docket No. 33] is **GRANTED**.

Dated: February 10, 2014     s/ Michael J. Davis
                 Michael J. Davis
                 Chief Judge
                 United States District Court